**PPG INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant,**

**Vitro Flex, S.A. and Cristales Inastillables de Mexico, S.A., Defendants–Intervenors.**

**Court No. 86–12–01546.**

United States Court of International Trade.

March 8, 1989.

Stewart and Stewart, Terence P. Stewart and David Scott Nance, for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Platte B. Moring, III, for defendant.

Brownstein, Zeidman & Schomer, Irwin P. Altschuler and David R. Amerine, for defendants-intervenors.

### OPINION

CARMAN, Judge:

The defendant Department of Commerce (Commerce) moves pursuant to Rule 71(a) of this Court to supplement the administrative record. The plaintiff, PPG Industries, Inc. (PPG), opposes the motion and claims that allowing Commerce to supplement the record to include a document it relied upon in making its determination would violate PPG's due process rights under the Fifth Amendment. PPG requests the document be excluded from the record or, in the alternative, that a remand be ordered to allow PPG to comment upon the document and to submit other evidence on the issue of compensating balances and for limited discovery to determine whether the International Trade Administration (ITA) considered other information in making its fi-

nal determination. The defendant-intervenors Vitro Flex, S.A. and Cristales Inastillables De Mexico, S.A. support the motion.

On the basis of the papers submitted, the arguments of the parties, the relevant statutes and regulations, and the reasons set forth herein, this Court remands the case to the ITA to supplement the administrative record with the portion of the verification report from Commerce's administrative review in *Litharge, Red Lead, and Lead Stabilizers From Mexico*, 51 Fed. Reg. 37,319 (1986), which was omitted from the administrative record. Further, the ITA shall permit all interested parties participating in the administrative review of the countervailing duty determination in *Fabricated Automotive Glass From Mexico*, 51 Fed.Reg. 44,652 (1986), to submit to Commerce comments related and limited to the portions of the verification report supplementing the record.

## BACKGROUND

In the action underlying this motion plaintiff, PPG Industries, Inc., contests certain aspects of the final determination of the International Trade Administration of the Department of Commerce, in *Fabricated Automotive Glass From Mexico*, 51 Fed.Reg. at 44,652. On February 27, 1987 Commerce filed the administrative record of this action with the Court. Subsequently, Commerce determined that one document considered by the Department in conducting its administrative review of the countervailing duty determination in *Fabricated Automotive Glass From Mexico*, was omitted from the record. The document sought to be added to the record is an excerpt from the verification report of Commerce's administrative review in *Litharge, Red Lead, and Lead Stabilizers From Mexico*, 51 Fed.Reg. at 37,319, which contains public information provided by the Government of Mexico regarding the compilation of information used in its publication of national average interest rates, known as the Indicadores Economicos ("I.E."). Commerce claims to have relied upon information in the *Litharge* verification report relating to the consideration by

the Bank of Mexico of compensating balances in its publication of the effective interest rates.

Supporting the motion and Commerce's contention that the document was relied upon in its final determination, is the Declaration of Paul McGarr, the Commerce official responsible for maintaining the administrative record in this case, which states in pertinent part:

3. The submitted document formed the basis for the second sentence of the following statement in the final results of *Fabricated Automotive Glass From Mexico* and was relied upon by the Department in making its determination in the administrative review that compensating balances were included in the interest rate information provided by the Bank of Mexico:

> The effective I.E. interest rates are based on data received from a sample of companies representing a cross section of the economy. These effective rates include finance charges, e.g. commissions, fees for opening a line of credit, fees for credit renewal, prepayment of interest, compensating balances, etc. and may also include compounding of interest, since many of the loans included in the Bank's sample have short (2–3 month) terms.

51 Fed.Reg. 44,653.

Declaration of Paul McGarr, (Program Manager, Office of Compliance, Import Administration, International Trade Administration, Department of Commerce), in support of Defendant's Motion to Supplement the Administrative Record, at 2.

The document in question was never included in the administrative record compiled during the administrative review of this case. Neither the existence of the document nor the agency's consideration of it were brought to the attention of PPG prior to litigation in this Court. Plaintiff neither saw the document nor had an opportunity to comment upon it.

## DISCUSSION

At the outset, the Court notes that the standard of review governing the merits of

the underlying case is whether the ITA's determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982). This Court cannot conduct a *de novo* review. *See, e.g., Beker Industries Corp. v. United States,* 7 CIT 313, 316–17, 1984 WL 3727 (1984); *Melamine Chemicals, Inc. v. United States,* 2 CIT 113, 116, 1981 WL 2484 (1981). "The court may not substitute its judgment for that of the [agency] when the choice is 'between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo* ....'" *American Spring Wire Corporation v. United States,* 8 CIT 20, 22, 590 F.Supp. 1273, 1276 (1984) (*quoting Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)), *aff'd sub nom. Armco, Inc. v. United States,* 3 Fed. Cir. (T) 123, 760 F.2d 249 (1985).

Judicial review is limited to the evidence contained in the administrative record. The record for review consists of all information presented to or obtained by the Secretary, the administering authority or the Commission during the administrative proceeding and all other material as set forth in 19 U.S.C. § 1516a(b)(2) (1982).[1] This Court, along with any subsequent reviewing court on appeal, must defer to the facts found by the agency. "The Court does not sit as a finder of fact with respect to the administrative record presented to it for review." *Industrial Fasteners Group, American Importers Assoc. v. United States,* 2 CIT 181, 190, 525 F.Supp. 885, 892 (1981), *aff'd,* 1 Fed.Cir. (T) 81, 710 F.2d 1576 (1983). It is for this reason that the agency's notice of both preliminary and final countervailing duty determinations must include "the facts and conclusions of

law upon which the determination is based." 19 U.S.C. §§ 1671d(d), 1671b(f) (1982). "The court's role is to review the fact-finding done by the administrative agency and the legal conclusions reached by the agency's application of legal principles to those facts, and to determine whether those findings and legal conclusions are supported by substantial evidence and are in accordance with law." *Industrial Fasteners Group,* 2 CIT at 190, 525 F.Supp. at 892–93. The Supreme Court has noted:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

*Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed. 2d 643 (1985).

In various amendments to the Tariff Act of 1930, Congress has set out a variety of procedures which parties to countervailing duty cases are entitled to rely upon. Section 774(a) requires both the Department of Commerce and the International Trade Commission to hold hearings in the course of their investigations, upon the request of any party, prior to a final determination. 19 U.S.C. 1677c(a) (1982 & Supp. IV 1986). Notice of the hearings must be published in the Federal Register. 19 U.S.C. 1677c(b) (1982). Commerce has implemented this hearing requirement in its regulations which provide an opportunity for interested parties to present views orally though cross-examination under oath is precluded.[2]

---

**1.** 19 U.S.C. § 1516a(b)(2) states in pertinent part:

(2) Record for Review

(A) In general  For the purposes of this subsection, the record, unless otherwise stipulated by the parties, shall consist of—

(i) a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding, including all governmental memoranda pertain-

ing to the case and the record of ex parte meetings required to be kept by section 1677f(a)(3) of this title; and

(ii) a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register.

**2.** Congress added the section 774 hearing requirement in the Trade Agreements Act of 1979. Prior practice did not require a hearing before

19 C.F.R. § 355.35 (1986). Parties are also permitted to submit pre- and post-hearing briefs and Commerce regulations provide for the submission to the agency of information and written views from interested parties during the investigation. 19 C.F.R. §§ 355.34, 355.35 (1986). Interested parties also have a right upon request to be apprised of the progress of the investigation. 19 U.S.C. § 1677f(a)(2) (1982). Congress also provided for the confidentiality of business proprietary information and the transcription and inclusion in the record of all *ex parte* meetings. 19 U.S.C. 1677f(a)(3) (1982 & Supp. IV 1986).[3]

A telephonic conference between the Court and attorneys for all parties to this action was conducted on January 26, 1989 at which time the Commerce Department maintained that since countervailing duty investigations are non-adjudicatory and fact-finding in nature, due process does not require that parties to a determination be given opportunity to comment upon the information gathered by Commerce. Defendant and defendant-intervenors cite *Timken Co. v. United States,* —— CIT ——, 699 F.Supp. 300 (1988), as controlling authority in support of this proposition. Further, Commerce argues that even if some due process safeguards are due PPG, they can be adequately accounted for in PPG's reply brief before this Court. Defendant's Memorandum in Opposition to Plaintiff's Motion For Judgment Upon the Agency Record at 52, n. 50.

In addition, defendant-intervenors argue that the ITA's inadvertent omission from the administrative record of a document relied on by Commerce did not prejudice the rights of any party to the investigation. Defendant-intervenors contend that follow-ing the issuance of preliminary results, and submission of written comments and public hearing, the ITA is not required to receive any additional comments from the parties to a review prior to its final determination. Defendant–Intervenors' Memorandum and Proposal in Response to Possible Remand ("Defendant–Intervenors' Memorandum") at 2–3. Consequently, defendant-intervenors argue,

> if the ITA had placed this document in its administrative record one day before issuance of the final results of this review, so that it was included in the record initially sent to the Court, there would be no issue as to that document's proper inclusion in the administrative record, despite the fact that the parties would not have had an opportunity to comment on it prior to issuance of the final results of the review.

Defendant–Intervenors' Memorandum at 4.

PPG, on the other hand, points out that the evidence contained in the administrative record is the limited basis for judicial review of the agency's determination since this Court cannot conduct a *de novo* review. Further, PPG contends that the "record" in countervailing duty cases is defined in 19 U.S.C. § 1516a(b)(2)(A) as all information presented to or obtained by the ITA during the course of the administrative proceeding. Consequently, PPG argues, it would be fundamentally unfair and a violation of procedural due process, to allow the administrative record to be supplemented to include a document which Commerce relied upon in making its determination, but which document PPG never had the opportunity to rebut, clarify, comment upon, or even acknowledge. Plaintiff's Opposition to Defendant's Motion to

---

the imposition of countervailing duties. The legislative history shows that Congress added the hearing requirement in order to expand the participation of interested parties in the proceedings. The Senate report accompanying the Act stated:

> "It is particularly important, in light of the provision for judicial review of such proceedings on an administrative record, as provided by this bill, that parties be given every possible opportunity to respond to information submitted by other parties."

S.Rep. No. 249, 96th Cong., 1st Sess. 97, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 483.

3. Congress was concerned with providing "the maximum availability of information to interested parties consistent with the need to provide adequate protection for information accorded confidential treatment." S.Rep. No. 249, 96th Cong., 1st Sess. 100, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 486.

Amend Administrative Record ("Plaintiff's Brief"), at 2. PPG's opposition papers state:

Because PPG has only now been informed of this information upon which the ITA allegedly relied, PPG is barred from attempting to develop further information that would either corroborate or contradict that allegedly contained in the verification report submitted by the ITA. Instead, PPG is left in the position of having to address this information without being able to adduce further factual data. Such an action is plainly detrimental to PPG's rights. More importantly, such a procedure would deprive the court of the information that might be further developed, to ensure that the court's decision regarding this issue is a fully informed one.

Plaintiff's Brief at 5–6.

*Timken Co. v. United States,* —— CIT ——, 699 F.Supp. 300 (1988), is inapposite to the instant case and distinguishable on a number of grounds. In *Timken* the plaintiff, a domestic manufacturer of tapered roller bearings, challenged Commerce's final determination which excluded certain foreign exporter's tapered roller bearings from the scope of the antidumping finding. *Timken* argued that Commerce violated its procedural due process rights by utilizing data upon which *Timken* did not have an opportunity to comment. The data in question was one telex from the United States Consulate in India sent to Commerce eight days before the publication of the final determination.

*Timken* did not concern an attempt by Commerce to supplement the record after it had made its determination. The documentary information *Timken* complained of was included in the record as the statute mandates. Consequently, the Court was not precluded from reviewing Commerce's determination under the substantial evidence test. Furthermore, it appears that the telex complained of by *Timken* was not in fact relied upon by Commerce as the basis of its determination. The *Timken* Court was not concerned with the issue of the agency submitting supplementary material avowed to be controlling in its final decision after that determination had already been made. In the instant case, Commerce has indicated that the excerpt from the verification report of Commerce's administrative review in *Litharge, Red Lead, and Lead Stabilizers From Mexico,* 51 Fed.Reg. at 37,319, *formed the basis* of its determination in the case at bar. The distinction between *Timken* and the instant case is that *Timken* appears to be concerned with an inadvertent exclusion of a document that did not relate to a material question of fact upon which the agency relied.

Considerations of fundamental fairness dictate that where appellate courts are limited in their scope of judicial review by rules requiring deference to the factual findings of the administrative agency, it is essential that administrative agencies have a full presentation of the facts to the maximum extent the laws and regulations require, and permit comment upon such facts as much as the law and regulations require, in order to insure that agencies as exclusive finders of the facts arrive at correct determinations. It is only in that manner that the interests of the government and the litigants challenging government determinations can be best served.

## DUE PROCESS

As our Court of Appeals has observed, "[a] prerequisite for due process protection is some interest worthy of protecting; 'We must look to see if the interest is within the [Constitution's] protection of liberty and property.'" *AAEI–TAG v. United States,* 3 Fed.Cir. (T) 58, 71, 751 F.2d 1239, 1250 (1985) (*quoting Board of Regents v. Roth,* 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972)). In order to be protected, an interest must be more than a "unilateral expectation." *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. "Those seeking constitutional protection under the due process clause must point to a 'legitimate claim of entitlement' prior to any consideration of the Government's constitutional obligations." *AAEI–TAG,* 3 Fed.Cir. (T) at 71, 751 F.2d at 1250, (*quoting Arnett v. Kennedy,* 416 U.S. 134, 167,

94 S.Ct. 1633, 1650–51, 40 L.Ed.2d 15 (1974)).

It is well settled that procedural due process guarantees do not require full-blown, trial type proceedings in all administrative determinations. *See, e.g., Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976). In *Pasco Terminals, Inc. v. United States,* 83 Cust.Ct. 65, C.D. 4823, 477 F.Supp. 201 (1979), *aff'd,* 68 CCPA 8, C.A.D. 1256, 634 F.2d 610 (1980), the Court found that "when administrative agencies conduct nonadjudicative fact finding investigations, rights such as cross-examination generally do not obtain." 83 Cust.Ct. at 78, 477 F.Supp. at 213 (*citing Hannah v. Larche,* 363 U.S. 420, 445–46, 80 S.Ct. 1502, 1516–17, 4 L.Ed.2d 1307 (1960)). The United States Customs Court in *Pasco* stated, "due process does not necessarily require a trial-type hearing or an opportunity to confront and cross-examine witnesses. The fact is that the differences in the origin and function of administrative agencies preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts." *Id.* However, agencies must adhere to the procedures Congress has mandated, otherwise their actions may be deemed arbitrary, capricious and not in accordance with law.[4]

This Court is not unmindful that administrative agencies must be allowed to perform their Congressionally mandated functions. Nevertheless, at a minimum, in order for judicial review on the basis of the administrative record to be meaningful under the due process clause of the Fifth Amendment, the creation and maintenance of the record itself must include adherence to the procedures which Congress has set out in the statutes and Commerce has im-

plemented in regulations. In this case, at the early stages of litigation, the Court believes that it is far better to correct possible errors now, than it is to await review by an appellate court, possibly many months in the future, which might compel a reopening of the administrative proceeding virtually from its inception. Additionally, the Court notes that considerations of judicial and administrative economy and the interests of fairness and finality in agency determinations counsel correction of procedural defects as early in the review process as possible.

Furthermore, were the Court to grant Commerce's motion to supplement the record with documents from another investigation, which Commerce claims it *relied* on in calculating its final assessment of countervailing duty subsidies, the Court would open the possibility that PPG's due process rights would be infringed. Were the Court to deny the motion outright, the Court would be precluded from fulfilling its statutory obligation on review, since there would of necessity be an inadequate, if not nonexistent, administrative record upon which to uphold the agency's determinations under the substantial evidence test.[5] Under the circumstances the proper approach appears to be for this Court to remand the issue to the ITA for redetermination.[6]

PPG requests discovery so it can determine what other material, if any, Commerce relied upon in making its final determination. In light of the Court's decision to remand this action to Commerce and since the final determination by Commerce will be reviewed on the basis of the record, not as a trial *de novo,* this Court finds it would be unnecessary to allow further discovery.

---

4. *Cf. Union of Concerned Scientists v. Atomic Energy Comm'n,* 499 F.2d 1069, 1082 (D.C.Cir. 1974) (an agency's failure to follow its own rules and procedures is fatal to action).

5. *See, e.g., Industrial Fasteners Group, American Importers Assoc. v. United States,* 2 CIT 181, 190, 525 F.Supp. 885, 892–93 (1981), *aff'd,* 1 Fed.Cir. (T) 81, 710 F.2d 1576 (1983); *Beker Industries Corp. v. United States,* 7 CIT 313, 318, 1984 WL 3727 (1984).

6. Commerce's claim that PPG's rights could be adequately met by arguments in PPG's reply brief cannot be credited by this Court. In such a case, PPG would be in the unenviable position of arguing factual positions it could not present evidence in the record to rebut. Furthermore, as shown above, Congress has given PPG the right to participate in the proceedings in a meaningful manner *before* a final determination has been reached by the agency.

In accordance with this Court's Remand Order issued on February 23, 1989, the case is remanded to Commerce to allow it to open and supplement the record with the excerpt from *Litharge, Red Lead, and Lead Stabilizers From Mexico.* All interested parties shall be permitted to examine the material and comment upon it. Within 30 days from the date of the order in this case, Commerce is directed to determine whether it affirms its prior determination or modifies it.