SURAMERICA DE ALEACIONES LAMINADAS, C.A., CONDUCTORES DE ALUMINIO DE CARIONI, C.A., INDUSTRIA DE CONDUCTORES ELECTRICOS, C.A., AND CORPORACION VENEZOLANA DE GUAYANA, PLAINTIFFS *v.* UNITED STATES, U.S. INTERNATIONAL TRADE COMMISSION, AND U.S. DEPARTMENT OF COMMERCE, DEFENDANTS, AND SOUTHWIRE CO., DEFENDANT-INTERVENOR

Court No. 88–09–00726

(Dated June 7, 1990)

*Arnold & Porter (Patrick F.J. Macrory, Esq.),* for plaintiffs.
*Stuart M. Gerson,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(M. Martha Ries),* for defendents.
*Wigman & Cohen, P.C. (Victor M. Wigman, Ralph C. Patrick, Dorothy H. Patterson),* for defendant-intervenor.

MUSGRAVE, *Judge:* Because this case involves confidential business information, the present opinion was first issued solely to the parties involved so that they could identify any confidential information contained herein. The parties have agreed upon which parts of the opinion contain confidential information, and those parts have accordingly been deleted from this public version of the opinion; the public and confidential versions have equal and full effect and are identical in all other respects.

Defendant in this action moves ("Motion to Strike" or "Motion") under Rule 12(f) of the CIT Rules to strike three different categories of statements or data from plaintiff Suramerica's Memorandum in Support of Plaintiff's Motion for Judgment on the Administrative Record ("Memorandum") and from Plaintiff's Reply Memorandum in support thereof ("Reply") (collectively, the "Memoranda"). Several of the portions sought to be struck were the subjects of another motion to strike filed earlier in this case by defendant. The portions sought to be struck are the following:

1. A footnote in Plaintiff's Reply that refers to a footnote in Plaintiff's Memorandum, which latter footnote refers to a periodical article that was allegedly published after the decision of the International Trade Commission ("Commission" or "ITC") in this case and is therefore not contained in the administrative record;

2. Several pages, almost in their entirety, of plaintiff's two Memoranda containing a discussion of European Communities quota information — the defendant contends that the discussion consists of "arguments and facts that are not contained in the administrative record"; and

3. Citations in Plaintiff's Memoranda to various documents, statements, and phrases allegedly misstated or not stated in plaintiff's pre-hearing brief before the Commission.

A. *Category 1.* — In footnote 124 of Plaintiff's Memorandum, plaintiff cites to an article from the periodical *Metals Week* that was published after the Commission's decision in this matter. In footnote 29 of Plaintiff's Reply, plaintiff cites, as support for a statement in the Reply, to the ITC Staff Report and appends to that citation a *"see also"* citation to plaintiff's initial Memorandum, pages 51–52 and notes 123 and 124. In an earlier motion to strike, defendant requested that the Court strike the *Metals Week* citation in note 124 of plaintiff's initial Memorandum because the article referred to was not before the ITC in its deliberations. Defendant now requests that note 29 of the Reply be struck as well, because of its reference to note 124 of the initial Memorandum.

Plaintiff concedes that the part of Memorandum note 124 contested by defendant "mistakenly contains information that is not part of the administrative record." Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike ("Opposition") at 2, n.2.

The objectionable citation appears, however, at the end of the second of two independent paragraphs in that footnote; the first (and longer) of the two paragraphs contains citations solely to documents contained in the administrative record. There appears to be no reason to strike this unobjectionable material. Therefore, only the second of the two paragraphs in note 124 of the Memorandum will be struck from that document.

The reference in footnote 29 of the *Reply* Memorandum to note 124 of the initial Memorandum is, as noted, phrased in a *"see also"* form and immediately follows a citation to the Staff Report contained in the administrative record. The reference appears in the first of two paragraphs in note 29. That paragraph consists of four lines, all citations; the following paragraph contains seventeen lines, almost all of which are text. Out of the entire twenty-one lines of the footnote, then, the sole objectionable part is the phrase "n.124" in the citation to the initial Memorandum. Defendant requests that the entire footnote in the Reply be deleted.

In the light of the relatively small portion of the whole footnote that the objectionable part represents, it seems unwarranted to strike the entire footnote as defendant requests. It is not necessary even to decide on that request, however, because of the fact that the Court in this order strikes the objectionable portion of note 124 of the initial Memorandum. As note 124 is thereby rendered unobjectionable, so it is unobjectionable to leave the reference to it in note 29 of the Reply.

B. *Category 2.* — In category two of its request, defendant requests that two different portions of plaintiff's Memoranda be struck. First, defendant seeks to have struck pages 67–69 of plaintiff's initial Memorandum, with the exception of a single sentence on page 68. Defendant asserts that while "[d]ocuments in the administrative record are cited to support some of the arguments and facts", "in all but one case [the sentence mentioned above], only the general subject matter is reflected in these [sources cited] and not the stated facts."

The discussion on those pages is a rebuttal by plaintiff of the allegation made by the petitioner before the ITC (Southwire Co.) that at the time of the events at issue in this action (1988), Venezuela (plaintiff's home country) had exceeded its quota for that year of non-dutiable rod exports to the European Communities. The ITC found that when the quota limits were exceeded, tariffs on EC rod imports increased dramatically, and stated, "Reportedly, Venezuela has already exceeded the nondutiable quota for 1988." *ITC Final Determination,* ITC Rec., List 1, Doc. 115 at 16 & n. 44. The Determination supports this finding by citing to "Petitioner's Post Hearing Brief [before the ITC] at 9–10." On page 10 of its post-hearing brief, the petitioner stated, "Our understanding is that Venezuela has already exhausted its quota for 1988 and that the 10% duty is already in effect." ITC Rec., List 1, Doc. 83. The significance of the allegation by Southwire is the inference that were the allegation true, plaintiff's exports prohibited from the EC by the quota ceiling would be diverted as exports to the United States. It appears that the ITC conducted no independent investigation of this allegation, but simply accepted Southwire's "understanding".

Plaintiff contends on page 66 of its Memorandum that the allegation was never investigated by the ITC, that the respondents (including plaintiff) had no chance to rebut it, and that it was untrue. Plaintiff also reproduces on that page a statement from the dissent of Commissioner Brunsdale that the allegation was insufficient to support a finding of threat of material injury to domestic industry, because "petitioner ha[d] not * * * supported its argument with the facts necessary to substantiate its contention * * *." Plaintiff's Memorandum at 66–67, quoting from Final Determination at 56.

On the pages of its Memorandum objected to by defendant, plaintiff rebuts the allegation that Venezuela had exceeded its EC quota and argues that even if it had, plaintiff's sales to the EC would not decrease. Plaintiff argues on page 68 that there was no basis for concluding that its sales would even be subject to the EC duty. Plaintiff states on page 69, "Sural [the plaintiff here] would have been able to prove, had it been allowed to do so, that the tariff quota has *not* curtailed Sural's sales to [its major European customer]." The citations on the contested pages are to EC Regulations published in the *Official Journal of the European Communities* and the ITC Staff Report.

The second portion of material in this second category that the defendant seeks to have struck is pages 25–26 of Plaintiff's *Reply,* which also

deal with the same EC quota issue. As with the corresponding portion of the Memorandum, defendant seeks to have this portion of the Reply struck in its entirety except for a single sentence and the citation in footnote 59 to the administrative record. The discussion on pages 25–26 (constituting in all approximately one page of text and footnotes) is an abbreviated summary of the arguments made by plaintiff in the above-discussed portion of its initial Memorandum. The footnotes similarly cite to the administrative record and the EC *Official Journal*.

Defendant argues in its Motion to Strike that the "arguments and facts" contained in these portions of the Memorandum and Reply are not contained in the administrative record. Defendant explains in note 2 of its motion that plaintiff sought to submit the information to the ITC in the form of a letter two and a half weeks after the deadline had passed for filing documents for the Commission's consideration; allegedly, because plaintiff failed to seek a waiver of the Commission's late filing rule, the letter was rejected as untimely filed. Defendant states, "Since this information was rejected, we do not know to what extent the arguments and information in the plaintiff's [Memoranda] duplicate the rejected information." Motion at 4, n.2. Plaintiff argues that the ITC violated its own rules in allowing Southwire to raise the contested EC allegation for the first time in its post-hearing brief, which alleged violation plaintiff sought to bring to the Commission's attention in the letter referred to above that was rejected by the Commission.

An examination of the Commission's notification of rejection reveals that plaintiff's letter was rejected not because of the Commission's late filing rules, but because "The Commission's rules do not provide for rebuttal [of post-hearing briefs];" the letter was returned as "improperly and untimely filed." Letter of 21 July 1988 from ITC Secretary, ITC Rec. List 1, Doc. 103. The plaintiff's letter would thus have been rejected whether or not plaintiff had requested a waiver of the Commission's late filing rules.

The policy of not permitting rebuttals to post-hearing briefs is understandable since the Commission's rules restrict the permissible content of post-hearing briefs to "information adduced at the hearing", 19 CFR § 207.24; because no new information is allowed in the post-hearing briefs, there should be no need to rebut them. However, when a party raises in its post-hearing brief information or issues that were not raised previously at the hearing before the agency (and to which the party against whom the new evidence is offered has consequently had no opportunity to respond) the refusal to permit rebuttal by the opposing party has perverse consequences.

The present case presents such a situation. Plaintiff claims that Southwire did not make its allegation concerning Venezuela's EC quota at any time during the agency hearings and before Southwire's post-hearing brief. (This claim is not denied.) In addition to its impropriety under the ITC rules, the admission of the allegation for the first time at that late stage necessarily meant that plaintiff would require additional

time to prepare a rebuttal thereto. To apply the rule against rebuttals in these circumstances places plaintiff in a "Catch-22" predicament: it is precluded *by* the agency rules from pointing out a violation *of* those very rules. Additionally, there is the very serious problem that the evidence on the record relied upon by the agency may be erroneous, in addition to being improperly admitted. Clearly, this would contravene the requirement that the Commission's determination be supported by substantial evidence on the record and be otherwise in accordance with law; were the Court unable to consider plaintiff's refutation of the allegation, it would be prevented from performing its statutorily mandated function of ensuring that the determination is so supported.

Also weighing against exclusion of plaintiff's rebuttal information is the unfairness inherent in not allowing plaintiff any effective means of responding to important allegations against its interests made before *and relied upon by* the ITC. *See PPG Industries, Inc.* v. *United States,* 13 CIT 183, 188, 708 F. Supp. 1327, 1330, 1332 (1989); *United States* v. *Morales,* 566 F.2d 396, 402 (2d Cir., 1977), *citing Accardi* v. *Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). In a related context — that of the "exhaustion doctrine" — where evidence not raised before the agency was offered (and where the opposing party sought to have the evidence excluded) before this Court on review of the agency determination, this Court wrote,

> Concomitant with the respect for values of judicial economy and "administrative autonomy" inherent in the application of the exhaustion doctrine * * * lies a responsibility for the agency * * * to allow a sufficient opportunity to raise issues. Thus, in determining whether questions are precluded from consideration on appeal, the Court will assess the practical ability of a party to have its arguments considered by the administrative body.

*Al Tech Specialty Steel Corp.* v. *United States,* 11 CIT 372, 377, 661 F. Supp. 1206, 1210 (1987) (citations omitted); see also *American Maritime Ass'n* v. *United States,* 766 F.2d 545, 566, n.30 (D.C. Cir. 1985) (exhaustion should not operate to prevent a reasonable opportunity to object to significant agency action). In refusing to prevent the offering party from presenting its evidence before this Court, the Court in *Al Tech* stated that the agency's scheduling in that case made it "exceedingly difficult [for the offering party] to generate meaningful commentary" on the issue before the completion of the agency's investigation. 11 CIT at 378, 661 F. Supp. at 1211.

The same principles require *a fortiori* that in this case the Court refuse to strike plaintiff's information apparently showing a violation of agency procedures and casting doubt on the accuracy of at least some of the evidence relied upon by the ITC. Unlike the situation in which the exhaustion doctrine is typically invoked, where the offering party failed before the agency to offer the evidence or make the argument in question, in the present case the plaintiff offered its information to the ITC shortly after the deadline for post-hearing briefs, but the ITC refused to

consider the information. Moreover, plaintiff offered its information not independently, but in rebuttal of allegations made by Southwire in its post-hearing brief and relied upon by the Commission in its final determination. The Court notes that the filing deadline recited by the ITC (in rejecting as untimely filed information submitted by various other parties) is June 30, 1988, *the same date on which the ITC accepted Southwire's Post-hearing Brief.* It is thus specious to suggest that plaintiff be penalized for not rebutting before that deadline new allegations accepted from another party for the first time *on* that deadline.

Another persuasive ground for refusing to strike plaintiff's EC rebuttal information is plaintiff's argument that defendant in its Motion adopts "too narrow a definition of the record for review." Opposition at 4. Plaintiff states that because it presented its EC information in rebuttal to the allegations made on that subject by petitioner Southwire, and because Southwire raised those allegations for the first time in Southwire's post-hearing brief before the ITC, "plaintiff's first and only opportunity to present this information to the Commission necessarily occurred after the Commission's deadline for submission of post-hearing briefs." *Id.* at 4–5. Plaintiff further states that it did not believe it was required to request a waiver of the Commission's late filing rules to submit the EC information, because it offered that information not for consideration on the merits but "only to show * * * that Southwire's new information was misleading and rebuttable, and to request that it not be considered * * *."

In connection with these statements, plaintiff challenges defendant's conception of the administrative record. Plaintiff points to the statute 19 U.S.C. § 1516a(b)(2)(A)(i) which defines the "record for review" as, *inter alia,* "a copy of all information *presented to* or obtained by the * * * Commission during the course of the administrative proceeding * * *." (Emphasis added.) Plaintiff states that it presented the EC quota information to the ITC on 19 July 1988, one month prior to the Commission's final determination, and that although the Commission rejected the information as untimely filed, the information nevertheless was *presented to* the Commission during the course of the investigation and should therefore be considered part of the record for review under the statutory definition.

Additionally, plaintiff asserts that the information is important to this Court's review of the Commission's threat determination in two respects: first, in that it is evidence tending to show that the Commission violated its own *procedural* regulations by basing its threat determination on the last-minute information submitted by Southwire without verifying that information or providing plaintiff an opportunity for rebuttal; and second, in that it refutes *substantively* the Commission's determination by exposing the falsity of the EC information submitted by Southwire and relied upon by the Commission in making its affirmative threat-of-injury determination. Plaintiff argues that its EC information shows that the Commission failed to explain adequately the factual ba-

sis for the affirmative threat determination and instead "engaged in speculation and conjecture" in relying upon the "misleading and rebuttable" information submitted by Southwire. Opposition at 7, n.11.

Plaintiff's EC information clearly is germane to this case, particularly on the issue of the procedural and substantive adequacy of the ITC's threat determination. Relevance and usefulness, alone, however, are not sufficient to render the information appropriate for consideration by the Court in its deliberations. The crucial question is whether the information should be deemed part of the statutorily defined "record for review" upon which the Court's determination must be based. The plain language of the statute suggests that it should: the information was "presented to" the Commission as required by § 1516a(b)(2)(A)(i). Plaintiff cites two cases to support its argument that this Court has the "authority to supplement the record with plaintiff's EC information": *Arkla Exploration Co.* v. *Texas Oil & Gas Corp.*, 744 F.2d 347 (8th Cir. 1984), *cert. den'd* 469 U.S. 1158 (1985), and *Floral Trade Council of Davis, Cal.* v. *United States,* CIT, Slip Op. 89–48 (April 17, 1989). Opposition at 5, n.8.

In *Arkla*, the U.S. District Court for the Western District of Arkansas, reviewing a determination of the Secretary of the Interior, considered in its deliberations information concerning a certain map that was not included in the administrative record compiled by the agency and that no longer existed by the time the case reached the district court. The Eighth Circuit Court of Appeals upheld the district court's consideration at trial of evidence relating to the map. The Court of Appeals noted that "when a court reviews agency action, it may not consider evidence outside the administrative record for the purpose of substituting its judgment for that of the agency." But the Court stated, "that did not occur here[, because t]he district court admitted and used supplementary evidence only to explain the record and to determine the adequacy of the procedures followed and the facts considered by the Secretary in reaching his decision." *Id.* at 357.

Unlike the situation in *Arkla,* involving complicated scientific/geologic questions and thus necessitating recourse to the additional information to "explain the record", the EC information submitted by Southwire its post-hearing ITC brief and by plaintiff here is not unusually complex or difficult to understand. But the Eighth Circuit stated that the contested evidence was properly considered by the district court in *Arkla* also to "determine the adequacy of the procedures followed and the facts found" by the agency. The EC information submitted by plaintiff in this case clearly serves these latter functions and thus does not represent simply an extraneous basis upon which this Court can substitute its judgment for that of the agency.

In *Floral Trade Council,* the agency determination under review referred to a certain document and to the entire records of several previous proceedings, but neither the document nor the previous records were included in the administrative record submitted to the Court for

review. After the Court permitted the private plaintiff to present a list of documents for inclusion in supplement of the submitted record, and invited the government to respond with any objections it might have on relevancy grounds, the government instead responded by arguing that the record originally submitted to the Court mistakenly referred to the excluded documents, that those documents were not really considered by the agency after all, and that they should therefore not be added to the record before the Court. The government added that in any event "the court may not determine 'on its own' the composition of the administrative record". Slip Op. at 3.

The Court rejected the government's objections. However, in this version of the case cited by plaintiff, the Court did not expressly admit the additional documents; rather it stated "[T]he court finds no reason to preclude the plaintiff from at least *explaining to the court why it believes the agency erred based on the proposed record.*" (Emphasis added.) Moreover, unlike that in *Floral Trade Council,* the administrative record in the present case does not expressly refer to the material that plaintiff seeks to add to the record, although the record *does* show that the agency considered — and relied upon — the EC allegations submitted by Southwire which plaintiff seeks — and sought — to rebut with the information at issue here.

In a different order on the matter, the Court in *Floral Trade Council* made the following pronouncement concerning the nature of the administrative record in this type of case:

> Contrary to the position of defendant, the record is not limited to documents "relied on or used" by the agency * * *. That is, the agency cannot ignore relevant information which is before it, and the reviewing court must be in a position to determine if it had done so * * *. [T]hose documents at the agency which become sufficiently interwined with the relevant inquiry are part of the record, no matter how or when they arrived at the agency.

709 F. Supp. 229, 230 (1989).

The crucial factor for purposes of the present case is the express language of 19 U.S.C. § 1516a(b)(2)(A) defining the administrative record for review as "all information *presented to* or obtained by the [agency] during the course of the administrative proceeding * * *." There is stated no requirement that the information have been *accepted* or *utilized* by the agency, and this Court should not insert such a requirement into the statute where Congress did not.

In any event, common sense dictates the contrary. In performing its task of determining whether the agency's determination is supported by substantial evidence on the record, it is necessary and quite appropriate for the Court to examine evidence submitted to the agency in rebuttal to corresponding information from a party opponent *on which the agency (at least in part) expressly based the determination the Court is to review.* Because of its relevance, then, and because it clearly was presented to

the agency, there is no persuasive basis upon which the EC information should be struck from the pleadings.

C. *Category 3.* — In this final category, defendant seeks to have struck various "information and arguments" allegedly "based upon documents that were not part of the administrative record". These items, in turn, fall into two sub-categories.

First, defendant seeks to require plaintiff to change the citations for five items of information contained in Plaintiff's Memorandum. The documents were referred to in plaintiff's pre-hearing brief before the ITC but were not put on the administrative record. Consequently, defendant requests that the Court delete from Plaintiff's Memorandum the citations to these documents and substitute therefor citations to the respective pages of the administrative record.

An examination of the Memorandum reveals, however, that the citations at issue *do* include page and footnote citations to plaintiff's pre-hearing brief on the administrative record in precisely the same form used by defendant in its motion under review here. After each of the five contested citations in the plaintiff's Memorandum and Reply, there appear the phrase, "cited in Preconference Brief [before the ITC] of Sural, C.A., ITC R. list 2, [Doc.] 10" and the respective page numbers on which the particular documents are cited. This is exactly the same citation form that defendant seeks in requesting that the citations to the documents be "stricken and replaced with citations to plaintiffs' Pre-hearing Brief before the Commission (ITC R., List 2, Doc. 10)." Motion at 6.

It is not clear to the Court whether defendant simply overlooked the fact that the citations it seeks are already present in the challenged pleadings (a puzzling prospect since defendant called the Court's attention to the particular page and footnote numbers), or whether it recognizes this fact, but wishes to have the other portions of the citations struck nevertheless. Whatever the explanation, the presence in the portion of pleadings at issue of proper citations to the administrative record renders that portion proper, and the Court will therefore expend no further time on this part of defendant's motion.

Next, defendant seeks to have struck from the Memorandum portions of two sentences and a third sentence in its entirety, because the two portions and the third sentence allegedly are not contained in the administrative record.

(a) On page 11 of Plaintiff's Memorandum, plaintiff quotes from a newspaper article as follows:

> Southwire's plant manager proclaimed that this record performance "was mirrored in the performance of the Kentucky [EC] rod and cable mill * * * [which] made a significant impact on the company's record-breaking revenues and earnings."

(Bracketed parts in Plaintiff's Memorandum.) Defendant states that this quotation was also included in plaintiff's pre-hearing brief before the ITC except for the bracketed part "[EC]" added in the Memorandum before this Court. Defendant argues that the bracketed part [          ]

Motion at 7, n.9. On this basis, defendant requests that the bracketed phrase "[EC]" be struck from Plaintiff's Memorandum. Motion at 7.

Plaintiff responds that the administrative record shows that the Kentucky mill *was* an EC rod mill. Plaintiff points to the statements by [          ] Opposition at 9. Plaintiff argues that therefore "more than 99% of Southwire's production at its Kentucky rod mill during 1987 — when Southwire had its highest earnings — [          ] that "this mill is thus aptly described as an "EC" rod mill, and that inclusion of that term in plaintiff's initial Memorandum was not improper." *Id.*

A mill more than [          ] of whose production is devoted to EC rod may fairly be described as an "EC rod mill". This conclusion does not require elaboration. For purposes of defendant's motion to strike as presented here, the only question regarding the quoted article is whether it corresponds to information on the agency record. In the light of the statements [          ] it strains credulity to argue that the record contains no information supporting a characterization of that plant as an "EC rod mill". The Court can not be detained by such an argument.

(b) In note 23 on page 15 of its Memorandum, quoting from a *Business Week* article, plaintiff states that in June 1988, "Alcoa reaffirmed its goal to produce primarily 'the products with the highest profit margins such as the sheet used in cans.' " Defendant states that in plaintiff's prehearing brief before the ITC, plaintiff used the word "emphasize", instead of the phrase "produce primarily" contained in Plaintiff's Memorandum before this Court. Defendant contends that because the *Business Week* article itself is not on the administrative record, the Court should strike from the Memorandum the phrase "produce primarily" and substitute therefor the word "emphasize".

There is no difference between these two phrases that is of any significance for purposes of this action; in the context of all the pleadings and evidence, they are interchangeable in the contested sentence. The Court is not warranted in dwelling longer on any contrary argument than to state that such cavils will not further delay a consideration of the merits of this action.

(c) Defendant's final objection is to a sentence on page 58 of its Plaintiff's Memorandum that states,

> As Southwire's 1987 SEC Registration Statement confirmed, U.S. demand for EC rod outstripped U.S. supply.

Defendant notes that this excerpt is not contained in plaintiff's prehearing brief before the ITC, which instead states,

> Indeed, in an October 1987 filing with the SEC, Southwire stated that "[d]emand for most of [Southwire's] rod, wire and cable products exceed[ed] [Southwire's] production capacity.

Motion at 7–8. Defendant argues that because the statement before the ITC refers only to the U.S. demand for *Southwire's* rod and not for *all* EC rod, plaintiff's reference in its Memorandum to "U.S. demand for EC rod" (the inference being *all* EC rod), "reflects information from the

SEC statement that is not on the administrative record", and that therefore the entire sentence from page 58 of the Memorandum should be struck. *Id.*

In response, plaintiff points out that in the excerpt from its Memorandum it states that Southwire's SEC statement *confirms* its allegation concerning total U.S. demand for and supply of EC rod, not that the statement is the *basis* for the allegation. Plaintiff notes that in its Memorandum it cites to other portions of the administrative record which allegedly show that "U.S. producers do not have the capacity to supply" companies wanting to purchase EC rod."[sic] Opposition at 12. Plaintiff continues that "because Southwire is one of the largest U.S. producers of EC rod, Southwire's condition is indicative of the domestic industry as a whole." Plaintiff thus argues that these facts constitute a sufficient *basis, on the record,* to support its allegations about the U.S. industry as a whole, and that its reference in the Memorandum to the SEC statement concerning *Southwire's* situation, as *confirming* those allegations, is proper even though the record does not contain information *from the SEC statement* that would alone constitute a *basis* for the allegation.

While Southwire is a major United States producer of EC rod, it is not clear that its share of the domestic market is such that data concerning the company's operations can be the basis for extrapolations about the national industry as a whole. This does not mean, however, that the record contains no evidence tending to show that domestic manufacturers of EC rod as a whole were unable to meet the demand for that product in the relevant time period. It appears that the record does contain such evidence, and it is therefore not improper for plaintiff to refer to the data in Southwire's EC filing as *confirming* that alleged fact.

The relevant evidence was before the agency. It is for the Court to decide whether that evidence *proves* the existence of the excess in domestic demand alleged by plaintiff, and whether the evidence as a whole is "substantial" enough to support the challenged final determination. There is therefore no reason to modify the sentence on page 58 of Plaintiff's Memorandum by replacing the letters "U.S." with the word "Southwire's".

D. *Summary.* — From the foregoing inquiry, the Court concludes that the second paragraph of footnote 124 of plaintiff's original Memorandum before this Court must be struck because of its reliance on the periodical article that was not before the ITC. In curing the defect in footnote 124, this modification will also obviate any need to modify the reference to that note in footnote 29 of Plaintiff's Reply Memorandum. None of the other requested modifications are warranted, and they therefore are denied.